IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

SEALED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA
2021 FEB 18 PM 5:36
OFFICE OF THE CLERK

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

FEZAN ALI
aka FAIZAN ALI,
FARHAN ALI,
ASIF ALI,
AVNISH MISHRA,
MOHAMMAD NAZMUL HAQUE,
RICK KELLEY, and
JOEY MACKE,

    Defendants.

8:21CR 61

INDICTMENT
21 U.S.C. §§ 331(a), 333(a)(2), 841(a)(1)
& (b)(1), 846, 952(a) & (b), 960(a) & (b),
963, and 1956(a)(2)(B)
18 U.S.C. §§ 2, 371, 1956(h)

The Grand Jury charges that:

## INTRODUCTION

At all times relevant to this indictment:

### The Controlled Substances Act

1. The Controlled Substances Act ("CSA") governed the manufacture, distribution, and dispensing of controlled substances in the United States. 21 U.S.C. §§ 801-971.

2. Various prescription drugs are scheduled substances under the CSA. There are five schedules of controlled substances -schedules I, II, III, IV, and V. Drugs are assigned to these schedules by Congress based on their potential for abuse, among other things. Schedule I drugs have no currently accepted medical use and have a high potential for abuse. Schedule II drugs have a high potential for abuse; their abuse may lead to severe psychological or physical dependence. Schedule III drugs have a moderate to low potential for physical and psychological dependence; their abuse potential is less than Schedule I and Schedule II drugs but more than

Schedule IV. Schedule IV drugs have a low potential for abuse; their abuse may lead to limited physical dependence or psychological dependence relative to the drugs or other substances in schedule III. 21 U.S.C. § 812(b)(2)-(4).

3. Heroine, lysergic acid diethylamide (LSD), and marijuana are Schedule I controlled substances.

4. Methylphenidate (sold as Ritalin, Concerta, Phenida, and Metadate CD), oxycodone and acetaminophen (marketed in the United States as Percocet, Endocet, and Tylox), hydrocodone (marketed in the United States as Lorcet, Lortab, Norco, Vicodin, and Zydone), Adderall (containing amphetamine mixture), Dexedrine (containing dextroamphetamine), oxycodone (marketed in the United States as Oxycontin and Roxicodone), morphine (marketed in the United States as MS Contin and Kadian), oxymorphone (marketed in the United States as Opana), and fentanyl (marketed in the United States as Fentora and Duragesic) are Schedule II controlled substances.

5. Codeine (marketed in the United States as Tylenol with codeine), ketamine (marketed in the United States as Ketalar and KetaVed), oxandrolone (marketed in the United States as Anavar), oxymethalone (marketed in the United States as Anadrol) are Schedule III controlled substances.

6. Alprazolam (marketed in the United States as Xanax), diazepam (marketed in the United States as Valium), zolpidem (marketed in the United States as Ambien), clonazepam (marketed in the United States as Klonopin), lorazepam (marketed in the United States as Ativan), triazolam (marketed in the United States as Halcion), and temazepam (marketed in the United States as Restoril) are Schedule IV controlled substances.

## The Federal Food, Drug, and Cosmetic Act

7. The United States Food and Drug Administration (FDA) was the federal agency responsible for protecting the health and safety of the American public by ensuring, among other things, that drugs were safe and effective for their intended uses and bore labeling that contained true and accurate information. FDA's responsibilities included regulating the manufacture and distribution of drugs, including prescription drugs, shipped and received in interstate commerce, as well as the labeling of such drugs. FDA carried out its responsibilities by enforcing the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301-399f (FDCA), and other pertinent laws and regulations.

8. The FDCA defined a "drug" to include "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man," and "articles...intended to affect the structure or any function of the body of man." 21 U.S.C. § 321(g)(1)(B) and (C).

9. A "prescription drug" under the FDCA was a drug that: (i) because of its toxicity and other potential for harmful effects, or the method of its use, or the collateral measures necessary to its use, was not safe for use except under the supervision of a practitioner licensed by law to administer such drug; or (ii) was limited by an application approved by FDA, to use under the professional supervision of a practitioner licensed by law to administer the drugs. 21 U.S.C. § 353(b)(1).

10. Dispensing a prescription drug without a valid prescription issued by a practitioner licensed by law to administer such drug was deemed to be an act that caused a drug to be misbranded while held for sale. 21 U.S.C. § 353(b)(1).

3

11. The FDCA prohibited the introduction or delivery for introduction, or causing the introduction or delivery for introduction, into interstate commerce of any drug that was misbranded. 21 U.S.C. § 331(a).

## Origins of the Investigation

12. In April 2018, The Drug Enforcement Administration (DEA) received a tip from Mallinckrodt Pharmaceuticals, a US company, that the company's morphine-sulfate pills were being advertised for sale on the Internet website, silkroadmeds.com. The representative for Mallinckrodt Pharmaceuticals denied the company had a relationship with silkroadmeds.com, and the representative claimed that any product purported by silkroadmeds.com to be produced by Mallinckrodt Pharmaceuticals was more than likely a counterfeit product.

13. In April of 2018, Investigators visited silkroadmeds.com and observed that numerous brand name pharmaceutical drugs were listed for sale on the site, including products that purported to be Schedule I, II, III, and IV controlled substances. The site did not require customers to have a prescription to order controlled substances as required by law, and the site used Western Union and MoneyGram for customers to remit payment.

14. Silkroadmeds.com is registered to Guandong Nicenic Technology CO, Ltd. Dba NiceNIC NICENIC. Silkroadmeds.com was created by Fezan Ali aka Faizan Ali, who resides in Pakistan.

15. On September 17, 2017, the United States Food and Drug Administration had sent an email containing a Warning Letter that several websites involved in the conspiracy were offering misbranded drugs for sale in violation of the FDCA and to immediately cease marketing the misbranded drugs.

## COUNT I

### Conspiracy to Distribute Misbranded Drugs

### Title 18, United States Code, Section 371

Paragraphs 1 through 15 of the Introduction and Count I are re-alleged and incorporated as if fully set forth herein.

16. Beginning as early as February 1, 2014, the exact date being unknown and continuing until at least November 10, 2020, in the District of Nebraska and elsewhere, the defendants, Fezan Ali aka Faizan Ali, Farhan Ali, Asif Ali, Avnish Mishra, Mohammad Nazmul Haque, Rick Kelley, and Joey Macke; and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate, and agree together and with each other to;

    a)    defraud the United States and its agencies, specifically the United States Food and Drug Administration, by circumventing the drug distribution system established to protect American consumers by regulating the labels labeling, distribution and manufacture of prescription drugs shipped or received in interstate commerce in order to ensure the safety, quality, and efficacy of drugs manufactured, sold, distributed, and dispensed in the United States; and

    b)    to commit an offense against the United States, that is, with intent to defraud and mislead, to introduce or cause to be introduced into interstate commerce misbranded drugs, in violation of Title 21, United States Code, Sections 331(a), 333(a)(2), and 353(b)(1).

### Goal of the Conspiracy

17. It was a goal of the conspiracy to obtain money and other things of value by selling to United States customers misbranded prescription drugs, including controlled

substances, and to evade United States laws and regulations regarding the distribution, labeling, and sale of prescription drugs.

## Manner and Means

18. Defendants Fezan Ali aka Faizan Ali (Pakistan), Farhan Ali (Citizen of Pakistan, but living in Trento, Italy), Asif Ali (Pakistan), Avnish Mishra (India), Mohammad Nazmul Haque (Naturalized US Citizen living in Florida, USA), Rick Kelley (Florida, USA), and Joey Macke (Ohio, USA) and other co-conspirators known and unknown, created, operated, and utilized numerous Internet pharmaceutical websites to unlawfully distribute a wide variety of controlled substances and misbranded prescription drugs. The websites included: medscareonline.com, overallpharmacy.us, usrxmedsonline.com, overthecounter.com, overthecounter.org, overallpharmacy.com, usdrugsaver.com, us2us-rx.com, drugs-order.net, zampharma.com, drugsplace.com, oneplushealthcare.net, onlinerxhub.com, pillspharma.com, rxdrugpharmacy.com, legitrxshop.com, rxstuff.net, pharmadaddy.biz, rxpharmacyline.com, apexmedico.net, rxpharmaplus.net, uspharmacyhub.com, drugs-point.com and silkroadmeds.com. Customers in the United States and elsewhere placed orders for controlled substances and prescription drugs on the websites controlled by Fezan Ali aka Faizan Ali, Farhan Ali, Asif Ali, Avnish Mishra, and other unknown co-conspirators. The defendants and their co-conspirators did not require a prescription for the purchase of the advertised drugs. None of the defendants were licensed medical practitioners or licensed in any way to dispense prescription drugs. The drug orders from the websites were processed by Fezan Ali aka Faizan Ali, Farhan Ali, Asif Ali, Avnish Mishra, and other unknown co-conspirators, and the controlled substances were shipped from the Philippines, Pakistan and India, to the other countries and the United States, including Nebraska. None of the 24 websites had DEA numbers, which is required to

dispense controlled substances in the United States, and none of the websites had valid pharmacy licenses in any state for any of the 24 websites. The customers for the drug orders for the above listed 24 websites resided in the United States, including Nebraska and various other countries.

19. Defendants Fezan Ali aka Faizan Ali, Asif Ali, and Avnish Mishra operated the illegal websites independently and utilized and processed orders from the same websites to include processing payments from the illegal sale of controlled substances. The defendants managed the websites using numerous email accounts and spreadsheets to record drug orders, payment for the drugs, and tracking numbers for the packages sent to customers.

20. Defendants Fezan Ali aka Faizan Ali, Farhan Ali, Asif Ali, and Avnish Mishra utilized numerous individuals in Pakistan, Italy, the Philippines, and the United States to receive money for the drugs purchased on the illegal websites. The defendants and others directed customers of the illegal websites to pay for the controlled substances using Western Union, Money Gram, bank wire transfers, personal checks, credit cards, and Bitcoin. The spreadsheets utilized by the defendants show that the majority of the illegal proceeds were sent via credit cards and wire transfers using Western Union and Money Gram. Fezan Ali, aka Faizan Ali, Asif Ali, and Avnish Mishra recruited and utilized individuals in the United States, including Mohammad Nazmul Haque, Rick Kelley, and Joey Macke, to create and use bank and merchant accounts for the processing of credit cards. Customers of the illegal websites in the United States provided their credit card information through emails, and the information was forwarded to Mohammad Nazmul Haque, Rick Kelley, Joey Macke, and other unknown co-conspirators who processed the credit cards. The money received from the credit cards was deposited into bank accounts and transferred to co-conspirators in Pakistan and India.

21. Many customers of the websites were directed to send payment to individuals in Pakistan, Italy, the Philippines, or the United States via Money Gram and/ or Western Union. Fezan Ali, aka Faizan Ali, Farhan Ali, Asif Ali, and Avnish Mishra received some payments directly from customers, but the majority of payments were sent to nominees, including Mohammad Nazmul Haque, Rick Kelley, and Joey Macke, who wired the majority of the money to co-conspirators in Pakistan and India. During the course of the conspiracy, the conspirators and nominees received at least $150,000 in drug trafficking proceeds, with approximately $150,000 being sent from a place in the United States to a place outside the United States.

## Overt Acts

In furtherance of the conspiracy, and to effect and accomplish the objects thereof, the following overt acts, among others, were committed in the District of Nebraska and elsewhere:

1. On February 1, 2014, Fezan Ali aka Faizan Ali, sent an email to Asif Ali with the tracking numbers for several drug orders for Adderall, Percocet, and Xanax, and attached a spreadsheet to the email that included the drug orders identified in the email, as well as numerous other drug orders for controlled substances.

2. On or about August 25, 2016, Fezan Ali, aka Faizan Ali, sent an email confirming payment by coconspirator, Mohammad Nazmul Haque, for domain registration of a website advertising the illegal sale of controlled substances.

3. On January 14, 2018, Fezan Ali aka Faizan Ali, launched silkroadmeds.com on the Internet advertising the illegal sale of controlled substances.

4. On June 7, 2016, Farhan Ali wired the proceeds from the illegal sale of a controlled substance to Fezan Ali in the amount of $613.79.

5.     On January 11, 2017, Farhan Ali wired the proceeds from the illegal sale of a controlled substance to Fezan Ali in the amount of $315.63.

6.     On July 14, 2018, Farhan Ali logged into Fezan Ali's email account, rickpaul38@gmail.com, that was utilized to document the illegal sale of controlled substances.

7.     On July 2, 2016, Asif Ali emailed Mohammad Nazmul Haque requesting that he ship orders for the illegal sale of controlled substances.

8.     On August 5, 2016, Asif Ali requested that Mohammad Nazmul Haque provide Asif Ali his bank information for American people and asked if customers can pay from their computer easily.

9.     On February 24, 2017, Asif ALI directed a customer ordering 50 Oxycodone 40mg to send him $320.00 via Western Union. Asif ALI advised the customer to tell Western Union that they are friends and have not seen each other for 6 years, and to tell them he is from Lahore Pakistan and his name is Asif Ali.

10.    On or about April 15, 2016, Avnish Mishra sent an email to Rick Kelley requesting Rick Kelley pick up a $159.00 Western Union payment for the order a controlled substance.

11.    On December 13, 2016, Avnish Mishra emailed a customer that payment for the illegal sale of a controlled substance had been received and that shipment of the controlled substance would be following.

12.    On March 15, 2016, Avnish Mishra instructed Joey Macke to process payments from the illegal sale of controlled substances.

13. On October 31, 2014, Mohammad Nazmul Haque forwarded a request for the illegal sale of a controlled substance to email address, dynamicsteriods@gmail.com, known to be used by Asif Ali.

14. On November 11, 2014, Mohammad Nazmul Haque caused his former employee to receive a payment for controlled substances via her PayPal account. PayPal notified the former employee that PayPal suspended her account because it had been used to facilitate the sale of prescription drugs.

15. On July 24, 2016, Mohammad Nazmul Haque wrote a check for payment to a domain management service company for a website advertising the illegal sale of controlled substances.

16. On December 2, 2015, Rick Kelley emailed Avnish Mishra to let him know that he had everything he needed to open a merchant account.

17. On March 18, 2016, Kelley withdrew $8,008.00 from his Regions Bank account that was opened to receive illegal proceeds and wired $8,000.00 in illegal proceeds to Avnish Mishra in India.

18. On May 18, 2016, after being directed to collect the proceeds from the sale of illegal controlled substances, Rick Kelley emailed Avnish Mishra stating he had collected the money.

19. On March 13, 2016, Joey Macke responded to an email from Avnish Mishra affirming his involvement in charging customers for the illegal sale of controlled substances.

20. On March 20, 2016, Joey Macke emailed Avnish Mishra advising that he had merchant processors willing to process payments from the illegal sale of controlled substances, but he first needed to open a bank account.

21. On April 29, 2016, Joey Macke opened a business bank account for First Idea LLC.

In furtherance of said conspiracy and to effect and accomplish the objects thereof, the following overt acts, among others, were committed in the Philippines, and the United States, including within in the District of Nebraska and elsewhere. Each overt act is a shipment of misbranded drugs defendants caused to be sent from a foreign country into the United States:

| OVERT ACT | DATE | COUNTRY SENT FROM | DESTINATION | DRUGS |
|---|---|---|---|---|
| 22 | June 4, 2018 | Philippines | Nebraska | Heroin, Acetaminophen Methorphan and 06-Monoacetylmorphine |
| 23 | July 12, 2018 | Philippines | Nebraska | Heroin, Acetaminophen Methorphan and 06-Monoacetylmorphine |
| 24 | August 22, 2018 | Philippines | Texas | Ketamine and Methorphan |
| 25 | December 10, 2018 | Philippines | Texas | Ketamine and Methorphan |

In violation of Title 18, United States Code, Section 371.

## COUNT II

### Conspiracy to Possess with Intent to Distribute Controlled Substances

The Grand Jury incorporates the allegations contained in paragraphs 1 through 15 of this Indictment as if fully set forth herein.

22. Beginning as early as February 1, 2014, the exact date being unknown and continuing until at least November 10, 2020, in the District of Nebraska and elsewhere, the

defendants, Fezan Ali aka Faizan Ali, Farhan Ali, Asif Ali, Avnish Mishra, Mohammad Nazmul Haque, Rick Kelley, and Joey Macke; and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate, and agree together to distribute and possesses with the intent to distribute and cause to be distributed a mixture or substance containing a detectable amount of:

      a)      the following Schedule I controlled substances: Heroin;

      b)      the following Schedule II controlled substances: methylphenidate (marketed in the United States as Ritalin, Concerta, Phenida, and Metadate CD), oxycodone and acetaminophen (marketed in the United States as Percocet, Endocet, and Tylox), hydrocodone (marketed in the United States as Lorcet, Lortab, Norco, Vicodin, and Zydone), Adderall (containing amphetamine mixture), Dexedrine (containing dextroamphetamine), oxycodone (marketed in the United States as Oxycontin and Roxicodone), morphine (marketed in the United States as MS Contin and Kadian), oxymorphone (marketed in the United States as Opana), fentanyl (marketed in the United States as Fentora and Duragesic);

      c)      the following Schedule III controlled substances: codeine (marketed in the United States as Tylenol with codeine), ketamine (marketed in the United States as Ketalar and KetaVed), oxandrolone (marketed in the United States as Anavar), oxymethalone (marketed in the United States as Anadrol);

      d)      the following Schedule IV controlled substances: alprazolam (marketed in the United States as Xanax), diazepam ( marketed in the United States as Valium), zolpidem (marketed in the United States as Ambien), clonazepam (marketed in the United States as Klonopin), lorazepam (marketed in the United States as Ativan),

triazolam (marketed in the United States as Halcion), temazepam (marketed in the United States as Restoril), and flunitrazepam (marketed in the United States as Rohypnol), in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1), all in violation of Title 21, United States Code, Section 846.

## COUNT III

### Conspiracy to Launder Monetary Instruments

Paragraphs 1 through 21 of the **Introduction** and **Count I** are re-alleged and incorporated as if fully set forth herein.

23. Beginning in at least December 12, 2014, the exact date being unknown and continuing until at least September 17, 2020, in the District of Nebraska and elsewhere, the defendants, Fezan Ali aka Faizan Ali, Farhan Ali, Asif Ali, Avnish Mishra, Mohammad Nazmul Haque, Rick Kelley, and Joey Macke; and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate, and agree together and with each other to commit money laundering in violation of Title 18 United States Code, Section 1956(a)(2)(B)(i), that is:

    a) to knowingly transport, transmit, or transfer, or cause or attempt to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed, in whole and in part, to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity,

namely, the illegal distribution of controlled substances, in violation of Title 18 USC 841 and 846.

### Goal of the Conspiracy

24. It was a goal of the conspiracy to obtain money and other things of value by selling to United States customers misbranded prescription drugs, including controlled substances, and to conceal the nature, location, source, ownership and control of the proceeds from the illegal sale of the controlled substances.

### Manner and Means

25. Between December 12, 2014, and continuing until at least September 17, 2020, in the District of Nebraska and elsewhere, customers of the websites selling illegal controlled substances were directed by the defendants to send payment to individuals in Pakistan, Italy, India, the Philippines, or the United States via Money Gram and/ or Western Union. Fezan Ali aka Faizan Ali, Farhan Ali, Asif Ali, and Avnish Mishra received some payments directly from customers, but the majority of payments were sent to nominees, including Mohammad Nazmul Haque, Rick Kelley, and Joey Macke, who wired the majority of the money they received to co-conspirators in Pakistan and India. This was done to conceal and disguise the nature, location, source, ownership and control of the drug proceeds.

In violation of Title 18 United States Code, Section 1956(h).

### FORFEITURE ALLEGATION

1. The allegations contained in **Counts I** through **III** of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 21, United States Code, Section 853(a) and Title 28, United States Code, Section 2461(c).

Upon conviction of the violation alleged in **Count I** or **II** of this Indictment, involving violations of Title 18, United States Code, Section 371, and Title 21, United States Code, Sections 841 or 846, defendants, Fezan Ali aka Faizan Ali, Farhan Ali, Asif Ali, Avnish Mishra, Mohammad Nazmul Haque, Rick Kelley, and Joey Macke, shall forfeit to the United States of America any property, including real property as well as tangible and intangible personal property, constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of offenses listed in **Counts I** or **II** and any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate, the commission of the offenses of which the defendants are convicted.

Money Judgment: Judgment against defendants Fezan Ali aka Faizan Ali, Farhan Ali, Asif Ali, Avnish Mishra, Mohammad Nazmul Haque, Rick Kelley, and Joey Macke, in favor of the United States of America, for a sum of money equal to the total amount of the proceeds of the violations of the Controlled Substances Act, as set out in **Counts I** and **II** of this Indictment.

Substitute Assets: If any of the property that is subject to forfeiture to the United States, as a result of any act or omission of the defendants:

a) cannot be located upon the exercise of due diligence;

b) has been transferred or sold to, or deposited with, a third party;

c) has been placed beyond the jurisdiction of the Court;

d) has been substantially diminished in value; or

e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and 881(a), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant[s] up to the value of the forfeitable property.

2.     The allegations contained in **Count III** of this Indictment relating to violations of Title 18, United States Code, Section 1956 are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 21, United States Code, Section 853; Title 18, United States Code, Section 982(a)(1); Title 18, United States Code, Section 981(a)(1)(C); and Title 28, United States Code, Section 2461(c).

As a result of the foregoing offenses alleging violations of Title 18, United States Code, Sections 1956(h) and 1956(a), defendants, Fezan Ali aka Faizan Ali, Farhan Ali, Asif Ali, Avnish Mishra, Mohammad Nazmul Haque, Rick Kelley, and Joey Macke, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real or personal, involved in such offense, and all property traceable to such property, including, but not limited to a money judgment equal to the sum of money involved in the money laundering conspiracy offense. If as a result of any act or omission of the defendants, any forfeitable property:

    a)     cannot be located upon the exercise of due diligence;

    b)     has been transferred or sold to, or deposited with, a third party;

    c)     has been placed beyond the jurisdiction of the Court;

    d)     has been substantially diminished in value; or

    e)     has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of defendants up to the value of the above forfeitable property.

A TRUE BILL.

FOREPERSON

The United States of America requests that trial of this case be held in Omaha, Nebraska, pursuant to the rules of this Court.

THOMAS J. KANGIOR
Assistant United States Attorney